*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRNDEN LAMIR PATTERSON,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2023

No. 360938
Houghton Circuit Court
LC Nos. 22-003286-FH;
          22-003287-FH;
          22-003288-FH;
          22-003289-FH

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

This appeal concerns legislative enactments raising the age for an individual to be considered a juvenile in criminal matters. The questions before us are whether the various amendments apply retroactively and whether retroactive application would violate the Ex Post Facto Clauses of the state and federal constitutions as applied to this defendant. We hold that the statutes do apply retroactively but that this does not amount to an Ex Post Facto violation, and affirm the circuit court's ruling.

## I. BACKGROUND

Between May and July 2021, Brnden Lamir Patterson allegedly committed four felony offenses. Patterson was 17 years old at that time; he turned 18 on September 10, 2021. MCL 712A.2(a)(1), as amended by 2018 PA 58, effective June 12, 2018, provided that the family division of the circuit court had "[e]xclusive original jurisdiction" in proceedings involving "a juvenile under 17 years of age," where the juvenile had "violated any . . . law of the state." See *In re Seay*, 335 Mich App 715, 720; 967 NW2d 883 (2021). MCL 764.27, as amended by 1996 PA 418, effective January 1, 1998, provided, "if a child less than 17 years of age is arrested, with or without a warrant, the child shall be taken immediately before the family division of circuit court of the county where the offense is alleged to have been committed," and "if during the pendency of a criminal case against a child in a court in this state it is ascertained that the child is less than 17 years of age, the court shall immediately transfer the case, together with all papers connected

with the case, to the family division of circuit court of the county where the offense is alleged to have been committed." Effective January 2, 1998, as adopted by 1996 PA 409, MCL 712A.3(1) further provided:

> If during the pendency of a criminal charge against a person in any other court it is ascertained that the person was under the age of 17 at the time of the commission of the offense, the other court shall transfer the case without delay, together with all the papers, documents, and testimony connected with that case, to the family division of the circuit court of the county in which the other court is situated or in which the person resides.

At no time during the relevant events was Patterson under the age of 17. Accordingly, at the time of his arrest, and based on the existing statutory language, his case fell within the jurisdiction of the criminal division of the circuit court.

During the pendency of these proceedings, however, the relevant statutes changed twice based on a "Raise the Age" legislative package. The question below and on appeal is whether Patterson was entitled to be adjudicated as a juvenile in the family division of the circuit court under the initial iteration of these new statutes or prosecuted as an adult in the criminal division of the circuit court as provided in subsequent corrective legislation.

In 2019, the Legislature amended the relevant statutes. With the enactment of 2019 PA 109, effective October 1, 2021, MCL 712A.3(1) provided:

> If during the pendency of a criminal charge against a person in any other court it is ascertained that the person was under the age of 18 at the time of the commission of the offense, the other court shall transfer the case without delay, together with all the papers, documents, and testimony connected with that case, to the family division of the circuit court of the county in which the other court is situated or in which the person resides.

MCL 712A.2(a)(1) was amended contemporaneously to provide "[e]xclusive original jurisdiction" in the family division of the circuit court "in proceedings concerning a juvenile under 18 years of age" in which the juvenile had committed a crime. 2019 PA 113, effective October 1, 2021. MCL 764.27 was similarly amended to provide for the immediate presentation before or transfer to the family division of any criminal matter involving a person under the age of 18. 2019 PA 103, effective October 1, 2021.

This amendment to MCL 712A.2(a)(1) did not apply to Patterson. As he had already turned 18 before the amendment took effect, the proceedings did not at that time "concern[] a juvenile under 18 years of age." And as Patterson was 18, the amended MCL 764.27 did not require his presentation before or transfer to the family division of the circuit court. MCL 712A.3(1), on the other hand, required a transfer to the family division because "[d]uring the pendency of" the charges against Patterson, the court "ascertained" that Patterson was under the age of 18 when he allegedly committed the offenses. The court complied with that language and transferred Patterson's case to the family division of the circuit court in October 2021.

-2-

The Legislature quickly adopted an additional change. With the enactment of 2021 PA 118, effective November 30, 2021, MCL 712A.3(1) now provides:

> For an offense occurring before October 1, 2021, if during the pendency of a criminal charge against an individual in any other court it is ascertained that the individual was under the age of 17 at the time of the commission of the offense, the other court shall transfer the case without delay, together with all the papers, documents, and testimony connected with that case, to the family division of the circuit court of the county in which the other court is situated or in which the individual resides. For an offense occurring on or after October 1, 2021, if during the pendency of a criminal charge against an individual in any other court it is ascertained that the individual was under the age of 18 at the time of the commission of the offense, the other court shall transfer the case without delay, together with all the papers, documents, and testimony connected with that case, to the family division of the circuit court of the county in which the other court is situated or in which the individual resides.

Neither MCL 712A.2 nor MCL 764.27 was amended. Because the subject offenses "occur[ed] before October 1, 2021," Patterson would only be within the jurisdiction of the family division if he "was under the age of 17 at the time of the commission of the offense[s]." He was not. Accordingly, the family division transferred Patterson back to the criminal division.

To recap, at the time the subject offenses were committed, MCL 712A.2(a)(1), MCL 712A.3(1), and MCL 764.27 provided for a 17-year-old defendant to be prosecuted as an adult. Accordingly, the prosecutor brought the charges against Patterson in district court. Before a preliminary examination could be conducted, several public acts took effect, providing for the transfer of criminal cases involving individuals under the age of 18 to the family division of the circuit court. This matter was transferred to the family division at that time. Patterson's term in the family division was short-lived. Following the enactment of 2021 PA 118, Patterson's consolidated files were transferred back to the district court.

On January 7, 2022, Patterson waived his right to a preliminary examination and was arraigned in the criminal division of the circuit court in four felony cases. Four days later, Patterson filed a motion to dismiss the cases for lack of jurisdiction. He contended that as applied to him, 2021 PA 118 was an unconstitutional, ex post facto law. As he was 17 years old when he allegedly committed the subject offenses, Patterson contended that jurisdiction belonged in the family division under the legislative package that took effect on October 1, 2021.

The circuit court denied Patterson's motion. The court outlined the legislative changes that occurred while Patterson's charges were pending and described when and why Patterson's case was transferred between courts. Although these changes impacted Patterson, the court determined that 2021 PA 118 was not an unconstitutional ex post facto law.

> Ex post facto essentially means that the government can't apply a law to an individual that didn't exist at the time the individual allegedly committed the crime. The November 30 modification didn't do that as relates to [Patterson]. Instead, it

caused [Patterson] to be subject to the law that was in effect at the time he allegedly committed the involved crimes. That's not ex post facto laws.

And, so, even if the statutes which we're talking about were retrospective, it doesn't affect the ruling appropriate to the proceeding. The November 30 [enactment] did not change the law as it existed at the time these offenses were allegedly committed. It didn't make those offenses and the ramifications thereof more detrimental to [Patterson]. And, consequently, the November 30 amendment or modification is not ex post facto.

Patterson filed a motion for reconsideration, but was again denied relief. This Court then granted Patterson's interlocutory application for leave to appeal. *People v Patterson*, unpublished order of the Court of Appeals, entered August 2, 2022 (Docket No. 360938).

## II. ANALYSIS

The first question we must ask is whether 2021 PA 118 was intended to apply retroactively.[1]

Retroactive application of legislation presents problems of unfairness because it can deprive citizens of legitimate expectations and upset settled transactions. We have therefore required that the Legislature make its intentions clear when it seeks to pass a law with retroactive effect. In determining whether a law has retroactive effect, we keep four principles in mind. First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38-39; 852 NW2d 78 (2014) (cleaned up).]

Overall, however, the main focus is on legislative intent.

---

[1] The prosecution contends that 2019 PA 109 did not apply to Patterson in the first instance as it took effect after Patterson committed his offenses and after he turned 18. This position is inconsistent with the language of the statute, however. The version of MCL 712A.3(1) in effect under 2019 PA 109 provided, "If during the pendency of a criminal charge against a person in any other court it is ascertained that the person was under the age of 18 at the time of the commission of the offense, the other court shall transfer the case without delay." A court must transfer a case if *at any time* while the charge is pending, the court discovers that the defendant was under the age of 18 when the offense was committed.

-4-

In determining whether a statute should be applied retroactively or prospectively only, the primary and overriding rule is that legislative intent governs. All other rules of construction and operation are subservient to this principle. . . . [S]tatutes are presumed to operate prospectively unless the contrary intent is clearly manifested. [*Frank W Lynch & Co v Flex Techs, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001) (quotation marks and citations omitted).]

If a statute impairs vested rights, creates a new obligation, imposes a new duty, or attaches a disability with respect to past transactions, the Legislature's likely intent is prospective application only. See *Franks v White Pine Copper Division*, 422 Mich 636, 671-674; 375 NW2d 715 (1985).

The main principle of statutory construction is that the plain language of the statute controls. And "the Legislature has shown on several occasions that it knows how to make clear its intention that a statute apply retroactively." *Frank W Lynch*, 463 Mich at 584. The Legislature has expressly stated in certain statutes that an act "shall be applied retroactively," MCL 141.1157, or that an act "shall be given retroactive application," MCL 324.21301a(2). There are other clues that the Legislature intends a statute to apply retroactively. "An amendment may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regarding its meaning." *Mortgage Electronic Registration Sys, Inc v Pickrell*, 271 Mich App 119, 126; 721 NW2d 276 (2006). "It is well settled . . . that when an amendment is enacted soon after controversies arise regarding the meaning of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." *Detroit v Walker*, 445 Mich 682, 697; 520 NW2d 135 (1994) (cleaned up).

By enacting 2021 PA 118 only two months after 2019 PA 109 took effect, the Legislature clearly intended to clarify the Raise the Age statute and resolve any controversy over its meaning. 2021 PA 118 directs that 2019 PA 109's new age proscriptions apply only after the effective date of that statute. 2021 PA 118 therefore was intended to apply retroactively.

Retroactive application of 2021 PA 118 does not create an ex post facto dilemma.

Both the Michigan and United States Constitutions prohibit ex post facto laws. US Const, art I, § 10; Const 1963, art 1, § 10. A law is considered ex post facto if it: "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a [committed] crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014). The prohibitions on ex post facto laws "assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning" as well as prevent the government from imposing arbitrary and vindictive legislation. *Weaver v Graham*, 450 US 24, 28-29; 101 S Ct 960; 67 L Ed 2d 17 (1981). See also The Federalist No. 44 (Madison) (Rossiter ed, 1961), p 282 (stating that "ex post facto laws . . . are contrary to the first principles of the social compact and to every principle of sound legislation"); The Federalist No. 84 (Hamilton) (Rossiter ed, 1961), pp 511-512 (observing that ex post facto laws have historically been "the favorite and most formidable instruments of tyranny"). [*People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021).]

The third category of ex post facto challenge is at issue here—Patterson contends that his punishment would be improperly increased if he is tried as an adult instead of adjudicated as a juvenile under a retroactive application of 2021 PA 118. However, "[c]ritical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment *beyond what was prescribed when the crime was consummated*." *Weaver*, 450 US at 30 (emphasis added). Application of 2021 PA 118 simply returns Patterson to the legal status applicable when he allegedly committed the charged offenses—to be under the jurisdiction of the criminal division of the circuit court. The act does not increase punishment beyond that prescribed at the time the crimes were committed. This is not unconstitutional.

As there existed no Ex Post Facto violation, the circuit court properly denied Patterson's claims that the court lacked jurisdiction over him and declined to transfer the matter back to the family division.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly